No. 11-10302


IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

JESSE WILLIAM MCGRAW,
Defendant-Appellant.

———————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION,
DISTRICT COURT NO. 3:09-CR-00210-B-1

———————————

APPELLANT'S BRIEF
———————————


Kimberly S. Keller
KELLER STOLARCZYK, PLLC
234 W. Bandera Rd., No. 120
Boerne, Texas 78006
Tele: 830.981.5000
Facs: 888.293.8580

## CERTIFICATE OF INTERESTED PERSONS

UNITED STATES OF AMERICA,
                    Plaintiff-Appellee,

v.                                                          No.11-10302

JESSE WILLIAM MCGRAW,
                    Defendant-Appellant.

The undersigned counsel of record certifies that the following listed persons have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

    1.  United States of America

| Trial Counsel | Appellate Counsel |
|---|---|
| Candina S. Heath | Nancy Larson |
| Assistant U.S. Attorney | Assistant U.S. Attorney |
| 1100 Commerce St. | 801 Cherry St. |
| 3rd Floor | Burnett Plaza, Unit #4 |
| Dallas, TX 75242 | Forth Worth, TX 76102 |

    2. Jesse William McGraw

| Trial Counsel | Appellate Counsel |
|---|---|
| Todd A. Durden | Kimberly S. Keller |
| The Durden Law Firm | KELLER STOLARCZYK, PLLC |
| 5750 Rufe Snow Dr., #130 | 234 W. Bandera Road, No. 120 |
| N. Richland Hills, TX 76180 | Boerne, Texas 78006 |

## STATEMENT REGARDING ORAL ARGUMENT

Appellant Jesse McGraw does not believe oral argument will assist the Court in determining the disposition of the issues presented. Accordingly, oral argument is not requested.

# **<u>TABLE OF CONTENTS</u>**

*Page*

CERTIFICATE OF INTERESTED PERSONS .............................. ii

STATEMENT REGARDING ORAL ARGUMENT ....................... iii

TABLE OF CONTENTS ...........................................................iv

TABLE OF CITATIONS ...........................................................vi

STATEMENT OF JURISDICTION ..............................................vii

STATEMENT OF THE ISSUES.................................................. 1

STATEMENT OF THE CASE .................................................... 1

STATEMENT OF THE FACTS .................................................. 2

SUMMARY OF THE ARGUMENT .......................................... 20

ARGUMENT ....................................................................... 21

THE DISTRICT COURT COMMITTED SIGNIFICANT
PROCEDURAL ERROR AT SENTENCING AND IMPOSED A
SUBSTANTIVELY UNREASONABLE SENTENCE.............................. 21

    A.    Standard of Review ............................................. 21

    B.    The District Court Committed Procedural
        Error in Calculating Appellant's Sentence .............. 25

        (1)Appellant is Entitled to a Reduction in His
            Offense Level for Acceptance of
            Responsibility .................................................. 25

(2) The Underlying Offenses Did Not Involve the Conscious or Reckless Risk of Serious Bodily Injury ..................................................... 27

(3) The Underlying Offenses Did Not Involve Sophisticated Means ......................................... 30

(4) Appellant Did Not Lead Five or More Persons ........................................................... 32

C.    The District Court's Non-Guideline Sentence is Substantively Unreasonable ............................... 33

(1) Sentencing Variances and Section 3553(a) ........................................................... 33

(2) A Non-Guidelines Sentence was Not Justified Under the Totality of the Circumstances ................................................. 35

D.    Appellant is Entitled to a Remand for Resentencing ....................................................... 40

CONCLUSION ....................................................... 41

CERTIFICATE OF SERVICE ................................................ 42

CERTIFICATE OF COMPLIANCE ............................................ 43

# TABLE OF CITATIONS

Page

**SUPREME COURT OF THE UNITED STATES**

*Gall v. United States,*
    552 U.S. 38 (2007) .................................................... 21,22

**CIRCUIT COURTS OF APPEALS**

*United States v. Akpan,*
    407 F.3d 360 (5th Cir. 2005) .......................................... 23

*United States v. Anderson,*
    174 F.3d 515 (5th Cir. 1999) .......................................... 25

*United States v. Brantley,*
    537 F.3d 347 (5th Cir. 2008) .......................................... 21

*United States v. Campos-Maldonado,*
    531 F.3d 337 (5th Cir. 2008) ...................................... 22,23

*United States v. Harms,*
    442 F.3d 367 (5th Cir. 2006) .......................................... 23

*United States v. Herrera-Garduno,*
    519 F.3d 526 (5th Cir. 2008) .......................................... 32

*United States v. Juarez-Duarte,*
    513 F.3d 204 (5th Cir. 2008) ...................................... 23,26

*United States v. Lewis,*
    412 F.3d 614 (5th Cir.2005) .......................................... 24

*United States v. Medina-Anicacio,*
    325 F.3d 638 (5th Cir. 2003) .......................................... 24

*United States v. Pineiro*,
    410 F.3d 282 (5th Cir. 2005)............................................. 24

*United States v. Smith*,
    440 F.3d 704 (5th Cir. 2006)............................................. 32

*United States v. Villegas*,
    404 F.3d 355 (5th Cir. 2005)............................................. 24

*United States v. Walters*,
    418 F.3d 461 (5th Cir. 2005)............................................. 23

*United States v. Washington*,
    44 F.3d 1271 (5th Cir. 1995)............................................. 32

*United States v. Weiss*,
    630 F.3d 1263 (10th Cir. 2010)...................................... 30

*United States v. Williams*,
    507 F.3d 905 (5th Cir. 2007)............................................. 21

## RULES & STATUTORY AUTHORITY

18 U.S.C. § 1030..................................................................... 1

18 U.S.C. § 3553................................................................... 34

18 U.S.C. § 3742.................................................................viii

28 U.S.C. § 1291.................................................................viii

Fed. R. App. P. 4 .................................................................viii

Fed. R. Crim. P. 52............................................................... 23

U.S.S.G. § 2B1.1 ........................................................... 27,30

U.S.S.G. § 3B1.1 ................................................................ 32

U.S.S.G. § 3E1.1 ................................................................ 25,26

## <u>STATEMENT OF JURISDICTION</u>

Jurisdiction of this Court is invoked under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), as an appeal from a final judgment of conviction and sentence in the United States District Court for the Northern District (Dallas Division) entered on March 22, 2011.[1] Notice of appeal was timely filed in accordance with Rule 4(b) of the Federal Rules of Appellate Procedure on March 21, 2011. (R.222); *see* Fed. R. App. P. 4(b)(2).

---

[1] (R.129). The official record, presentence report, and other relevant sentencing documents are cited as follows: "(R.[page #])"; "(PSR [page #]); (Addendum to PSR [page #]); (Defendant's/Government's Objections to PSR [page #]); and (Statement of Reasons [page #])."

## STATEMENT OF THE ISSUES

**THE DISTRICT COURT COMMITTED SIGNIFICANT PROCEDURAL ERROR AT SENTENCING AND IMPOSED A SUBSTANTIVELY UNREASONABLE SENTENCE.**

## STATEMENT OF THE CASE

Jesse McGraw was indicted in federal district court for the Northern District of Texas (Dallas Division) for: (1) transmitting a malicious code in violation of 18 U.S.C. §§ 1030(a)(5)(A) and (c)(4)(B)(i)(II) (Count One); and (2) transmitting a malicious code in violation of 18 U.S.C. §§ 1030(a)(5)(A) and (c)(4)(B)(i)(II) and (IV) (Count Two). (R.13-15). On May 14, 2010, before the Honorable Jane Boyle, United States District Judge for the Northern District of Texas, McGraw, without the benefit of a written plea agreement, pleaded guilty to both counts of transmitting a malicious code as charged in the indictment. (R.364-65, 380). The district court accepted McGraw's plea, (R.384), and later sentenced McGraw to concurrent 110-month terms of imprisonment to be followed by concurrent three-year periods of supervised release. (R.530-31). The district court ordered McGraw to pay

1

$31,881.75 in restitution and a $100 special assessment for each count. (R.530-31). McGraw timely perfected his appeal to this Court. (R.222).

## STATEMENT OF THE FACTS

### McGraw is arrested and pleads guilty

McGraw was arrested after investigators from the FBI Cyber Division determined he had used his position as a security guard at the W.B. Carrell Memorial Clinic to access and install a malicious code and program onto the facilities' computers. McGraw was indicted for two counts of transmitting a malicious code based upon his conduct at the Clinic. (R.13-15). On January 29, 2010, McGraw entered a written plea agreement with the Government and provided a factual resume concerning his conduct. (R.58-75). The factual resume signed by McGraw outlined the facts pertinent to his offenses and states as follows:

> 1.    From October 30, 2008, until June 26, 2009, McGraw was employed as a security guard for United Protection Services, a security firm in Dallas, Texas. From November 1, 2008, until June 26, 2009, McGraw was assigned by United Protection Services to work security at the North Central

Medical Plaza, located at 9301 North Central Expressway, Dallas, Texas. The North Central Medical Plaza housed medical offices and surgery centers, to include the W.B. Carrell Memorial Clinic[2] and the North Central Surgery Center.[3] Generally, McGraw's shift was Thursday through Tuesday, from 23:00 until 07:00. McGraw's assignment constituted a position of trust.

2.    The following computers (or computer systems) were located within the North Central Medical Plaza, and constituted protected computers pursuant to 18 U.S.C. § 1030(e)(2), in that they were used in or affecting interstate commerce or communications.

a. The Nurses Station E computer had the host name WBCCW125 and was located on the 5th floor of the North Central Medical Plaza. The computer was used to track a patient's progress through the W.B. Carrell Memorial Clinic. Medical staff also used the computer to reference a patient's personal identifiers, billing records, and medical history.

b. The HVAC computer was located in a locked room of the North Central Medical Plaza and was used by the building engineering staff. The HVAC computer was used to control the Heating Ventilation and Air Conditioning for the first and second floors used by the North Central Surgery Center.

3. McGraw gained physical access to approximately 14 computers located in the North Central Medical

---

[2] The W.B. Carrell memorial Clinic provides comprehensive orthopedic care by board certified orthopedic surgeons and staff.

[3] The NCSC provides state-of-the-art equipment for surgeons to perform procedures in the specialty areas of General Surgery; Gastroenterology (GI); Gynecology; Ophthalmology; Orthopedic; Pain Management; Plastic Surgery; Podiatry; Ear, Nose and Throat; Bariatric; Spine; and Urology.

Plaza, including the two identified above. McGraw does not have a specific recollection of installing (transmitting) "Logmein," an application program that allows remote access to computers to all of the computers that he physically accessed. However, McGraw does have specific recollection of transmitting Logmein to some of the computers and does not contest that he transmitted Logmein to the remainder. The Logmein installation was unauthorized and compromised the integrity of the computer systems and the associated network by allowing unauthorized, remote access by McGraw and anyone with access to his Logmein account name and password. McGraw also impaired the integrity of some, but not all, of the computer systems by removing security features, *e.g.* uninstalling antivirus programs, which made the computer systems and related network more vulnerable to attack. McGraw also installed a malicious code and program, sometimes called a "bot," on some, but not all, of the computers. "Bots" are usually associated with theft of data from the compromised computer, using the compromised computer in denial of service attacks, and using the compromised computer to send spam. In this case, McGraw intended to use the bot to launch a denial of service attack on the website of a rival "hacker" group. McGraw installed the "bot" known as "RxBot" on some of the compromised computers and controlled the compromised computers from an IRC terminal under his control, specifically the servers eta.myvnc.com and eta2.myvnc.com.

4.    McGraw intended to impair the integrity of the accessibility of the computers and computer systems, by turning off the security protocols, and by creating a means by which he could remotely access the computers and computer systems.

4

Therefore, by installing (transmitting) the Logmein program and the RxBot program, McGraw damaged and intended to damage the computers or computer systems as defined by 18 U.S.C. § 1030(e)(8).

5. McGraw knew that these actions would damage the security of and integrity of these systems. McGraw advocated taking these kinds of actions in order to adversely affect the integrity of systems in instructions that he posted online for members of his "Electronik Tribulation Army" (ETA) and other individuals interested in committing crime against computers.

6. On or about February 12, 2009, McGraw abused the trust placed in him as a security guard and bypassed the physical security to the room in the North Central Medical Plaza containing the HVAC computer. At approximately 23:35, McGraw without authorization began the download (transmission) of "Ophcrack-vista-livecd-2.1.0.iso," a malicious password cracking tool from the website sourceforge.net. Ophcrack has both lawful and malicious applications. McGraw used Ophcrack in a malicious manner to recover passwords from some, but not all, of the compromised computers. McGraw does not specifically recall that he also used the HVAC computer to download and then install (transmit) without authorization Team Viewer 4, a remote access program. However, McGraw does not contest that he did so. McGraw does not specifically recall circumventing the security software McAfee and added Teamviewer to the list of allowed programs in McAfee. However, McGraw does not contest that he did so. By February 13, 2009, at approximately 01:19 McGraw again without authorization physically accessed the HVAC computer and inserted a removable storage device

5

named "HARD DISK X" and executed the program daemon4301-lite.exe which allowed McGraw to emulate a CD/DVD device with the removable storage device. McGraw used "Sonic Record Now," a CD/DVD burning software, to create a bootable CD image using a previously downloaded "OphCrack-xp-livecd.iso."

7.    On or about April 28, 2009, at about 01:47, McGraw abused the trust placed in him as a security guard and accessed without authorization the Nurses Station E computer. In a video created and narrated by McGraw, McGraw appears to insert into the computer a CD containing the OphCrack program to bypass any passwords or security. McGraw also appears to insert a removable storage device into the computer which he claimed contained a malicious program or code, called RxBot. FBI found the CD containing the OphCrack program in McGraw's house and found the source code for the RxBot on McGraw's laptop. The application log shows that at the time the video was created, McGraw did disengage the McAfee VirusScan Enterprise program on the computer, which turned off the existing security features making the computer more vulnerable to attack.

8. On or about April 7, 2009, at approximately 02:30, McGraw abused the trust placed in him as a security guard and bypassed the physical security to the room in the North Central Medical Plaza containing the HVAC computer. The application log shows that, at approximately 03:12, McGraw installed (transmitted) Logmein to the HVAC computer. Although McGraw does not have specific recollection of successfully transmitting Logmein to the HVAC computer, he does have specific recollection of attempting to do so and does not

contest that it was successfully done. Furthermore, McGraw admits that he did use his Logmein account to gain unauthorized, remote access to the HVAC computer.

9. On or about the following dates, McGraw remotely accessed without authorization the HVAC computer:

| DATE | TIME | DURATION |
|---|---|---|
| 04/13/09 | 07:21 | 5m:43s |
| 04/13/09 | 07:24 | 2m:37s |
| 04/13/09 | 20:09 | 55m:31s |
| 04/14/09 | 06:50 | 2m:38s |
| 04/14/09 | 06:56 | 14m:15s |

10. McGraw was not authorized, and knew that he was not authorized, to physically or remotely access any of these computers or computer systems located within the North Central Medical Plaza. McGraw was not authorized, and knew that he was not authorized, to transmit any programs, codes, or commands to these computers or computer systems.

11. McGraw was aware that some of the computers he compromised, such as the Nurses Station E computer, were used to access and review medical records. McGraw claims that he did not review or modify patient medical records and the government is not aware of any evidence to the contrary. However, by gaining administrator access to these computers, McGraw would have the ability to modify these records if he took additional steps such as circumventing additional security measures.

7

12.   McGraw was aware that the HVAC computers were used to maintain the environmental controls at the facility. While McGraw claims that [he] did not plan to adversely affect the actual climate in the facility or harm any of the facility's patients or employees, he knew that by modifying the HVAC computer controls he could affect the temperature of the facility. By affecting the environmental controls of the facility, he could have affected the treatment and recovery of the patients who were vulnerable to changes in environment. In addition, he could have affected treatment regimes, including the efficacy of any or all of the temperature sensitive drugs.

13. McGraw understands that the cost to remediate the compromised computers and computer systems with the North Central Medical Plaza exceeded $30,000, but was less than $70,000.

(R.68-74).

## The Government moves to withdraw the parties' plea agreement

Following the execution of the plea agreement, McGraw advised the Government that he no longer desired to plead guilty and demanded a jury trial. (R.78). The Government, in turn, moved to withdraw the parties' plea agreement. The district court declared the plea agreement void and released the parties from their respective obligations created under the plea agreement. (R.82). Shortly thereafter, the Government

filed a superseding indictment against McGraw alleging twelve additional violations of 18 U.S.C. § 1030. (R.125). The superseding indictment charged McGraw with the following offenses: (1) transmitting a malicious code in violation of 18 U.S.C. §§ 1030(a)(5)(A) and (c)(4)(B)(i)(II) (Count One); (2) transmitting a malicious code in violation of 18 U.S.C. §§ 1030(a)(5)(A) and (c)(4)(B)(i)(II) and (IV) (Count Two); and (3) transmitting a malicious code in violation of 18 U.S.C. §§ 1030(a)(5)(A) and (c)(4)(B)(i)(II) (Counts Three through fourteen). (R.126).

### McGraw decides to plead guilty without the benefit of a plea agreement.

McGraw subsequently decided to enter a guilty plea to both counts of the original indictment without the benefit of a plea agreement. (R.178-79). On May 14, 2010, McGraw entered a plea of guilty to Counts One and Two of the original indictment. (R.364-65, 380). McGraw notified the court at his rearraignment hearing that he agreed with the factual resume he provided in connection with his voided plea agreement and moved the court to consider this factual resume as the basis of

his guilty plea. (R.178, 364, 380-81). The district court believed this factual basis was sufficient to support McGraw's plea and accepted McGraw's guilty plea. (R.384).

### The probation office concludes the applicable Guideline range of imprisonment for McGraw is only 51 to 63 months

The district court ordered that a presentence report ("PSR") be prepared to assist it in sentencing McGraw. The PSR ordered by the district court, applied the 2009 version of the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") and assigned McGraw a base offense level of 6 pursuant to U.S.S.G. § 2B1.1(a)(2). (PSR 13-14).

The probation officer determined the loss amount in this case totaled $31,881.75. (PSR 14). As a result of this loss amount, the probation officer increased McGraw's offense level by six levels pursuant to U.S.S.G. § 2B1.1(b)(1)(D) because the loss is more than $30,000, but less than $70,000. (PSR 14). The PSR also recommended the following enhancements to McGraw's offense level: (1) a two-level enhancement pursuant to U.S.S.G. § 2B1.1(b)(9)(C) for participating in an offense that

involved sophisticated means; (2) a two-level enhancement pursuant to U.S.S.G. § 2B1.1(b)(13) for participating in an offense that involved the conscious or reckless risk of serious bodily injury; (3) a four-level enhancement pursuant to U.S.S.G. § 2B1.1(b)(16)(A)(ii) for being convicted of two counts of 18 U.S.C. § 1030(a)(5)(A); (4) a two-level enhancement pursuant to U.S.S.G. § 3B1.3 for abusing a position of trust in a manner that significantly facilitated the commission of the offense; and (5) a two-level enhancement pursuant to U.S.S.G. § 3C1.1 for obstruction of justice. (PSR 14-15).

The PSR did not recommend that McGraw receive any credit for his acceptance of responsibility even though he pleaded guilty to the original two-count indictment before any trial occurred in connection with the case. (PSR 15). The PSR thus arrived at a total offense level of 24, (PSR 15), and assigned McGraw a criminal history category of I. (PSR 17). With a criminal history category of I and a total offense level of 24, the PSR determined the applicable Guideline range for

McGraw was between 51 and 63 months imprisonment. (PSR 27).

### The PSR is challenged by both McGraw and the Government

McGraw, among other things, disputed the probation officer's findings that his offenses involved sophisticated means and involved the conscious or reckless risk of serious bodily injury. (Defendant's Objections to PSR 1-2). He also argued that the probation officer incorrectly denied him credit for acceptance of responsibility because he demonstrated remorse for his actions and avoided the time and expense of a trial by entering his guilty plea. (Defendant's Objections to PSR 2-3). McGraw further complained that a two-level enhancement for obstruction of justice was not warranted, but later withdrew this objection. (Defendant's Objections to PSR 2; R.415). The record also shows McGraw made an objection based on a factual inaccuracy in the PSR and requested a downward departure due to his diminished mental capacity at the time of his offenses. (Defendant's Objections to PSR 3).

12

The Government also lodged multiple objections to the PSR, including: (1) the PSR fails to include a four-level enhancement based on McGraw's conduct affecting more than fifty victims; (2) the loss amount reflected in the PSR significantly understates the monetary loss attributable to McGraw's conduct; (3) the PSR fails to apply a four-level enhancement pursuant to U.S.S.G. § 3B1.1(a) for McGraw's role as a leader of a criminal activity involving five or more participants; and (4) the PSR fails to advance grounds for an upward departure. The Government further urged the probation officer to supplement the PSR with additional corrections and comments to make it "more accurate."

In response to the parties' objections, the probation officer issued a second addendum to the PSR. (Second Addendum to PSR 1). The probation officer accepted some of the additional factual information provided by the Government to make the PSR "more accurate." (Second Addendum to PSR 1-2). The probation officer further accepted the Government's position that factors may exist to support an upward

13

departure. (Second Addendum to PSR 7). Other than these changes, the probation officer supported the original findings contained within PSR. (Second Addendum to PSR 1-10).

### McGraw and the Government file additional complaints about the probation officer's findings

McGraw and the Government each filed a response to the probation officer's second addendum to the PSR. McGraw's response re-urged his prior objections. (Defendant's Response to the Second Addendum at 1-4). Similarly, the Government's response re-urged its prior objections. (Government's Objections at 1-6). The Government's response further expounded upon the justification for an upward departure in this case. (Government's Objections at 6-9).

McGraw also filed a motion for sentencing variance, requesting the court to impose a sentence below the advisory guideline range. (Motion for Sentencing Variance at 1). His motion urged the court to consider a punishment of 36 months for his conduct. (Motion for Sentencing Variance at 4). As support for his alternative sentence, McGraw filed a Sentencing Memorandum urging the court to consider the

following factors: (1) his family background (including the needs of his wife and child and the fact that he did not have a relationship with his parents during his childhood); (2) his active involvement in his church; (3) his lack of a criminal background; (4) the absence of threats, injury, or other damage  during the course of the offenses; (5) a below guideline sentence is more than sufficient to achieve the goals of sentencing; and (6) the statute of conviction permits a punishment between zero and ten years. (Motion for Sentencing Variance at 1-4).

### The district court rejects McGraw's sentencing complaints

The district court overruled McGraw's objections, (R.407, 410, 417, 418), and then stated it was adopting the findings of the PSR, the first addendum to the PSR, and the second addendum to the PSR. (R.418, 421). The court proceeded to hear testimony from McGraw and several other witnesses as to McGraw's circumstances.

McGraw's biological mother, Carol Rogers, testified that she and McGraw's biological father were addicted to drugs and

abandoned McGraw when he was only a child. (R.424-26). She testified she reunited with McGraw when he was an adult, and indicated he became active in the church around 2004. (R.427-28). Rogers further indicated that she would be there to support McGraw upon his release from prison. (R.430).

Bishop Eric McClellan also testified in support of McGraw. (R.435). Bishop McClellan testified that McGraw is immature, "almost like a child." (R.437). He stated his church has a discipleship home to assist with rehabilitating individuals released from prison, like McGraw, and that McGraw could benefit from the clinical psychologist associated with this program. (R. 438-39).

McGraw's wife, Beatriz Bracho, also testified at sentencing. Bracho testified that she is a brittle diabetic, who McGraw has always cared for. (R.442). She stated McGraw is a good husband and is loved by her family. (R.442-43).

Finally, McGraw informed the court that he is "literally broken, ashamed and humiliated . . . by what [he] has done." (R.443). McGraw reiterated to the court that "I am very guilty,"

16

and professed that he "just made a horrible, horrible mistake." (R.444-45). He indicated that his incarceration has returned him to the right path and that he knows his destiny is to help people. (R.446). McGraw also expressed that he is remorseful for his actions. (R. 447).

### The district court sustains the Government's objections

Following McGraw's remarks, the court allowed the prosecution to present testimony in support of its sentencing complaints. (R.450-51). Among the witnesses presented by the Government, Special Agent Ajeet Sign, who is with the FBI Cyber Division, testified that he investigated McGraw's conduct and that McGraw admitted to hacking into the clinic's computers.   (R.470, 473). When Agent Sign asked McGraw why he "hacked" the computers, McGraw allegedly commented that "as a leader, you have to show that you can do things." (R.473). McGraw also told Agent Sign that his intent was to perform a "distributed denial-of-service [("DDoS")] attack on

rival hacker groups"[4] on July 4, a day McGraw allegedly referred to as "Devils Night." (R.474). McGraw told Agent Sign that he started his hacking organization (Electronik Tribulation Army ("ETA")) with another individual. (R.476). Agent Sign stated McGraw provided him with a list of individuals who were purportedly members of his organization. (R.477, 482-83, 490-91).

On cross-examination, Agent Sign stated McGraw is the only person criminally responsible for the offense conduct. (R.505-06). He also noted that McGraw did the right thing by providing authorities with information about Devils Night, and that his cooperation may have helped aver some of the harm that was planned. (R.506).

The district court overruled the Government's objections concerning the incorrect calculation of the number of victims and the amount of loss at issue. (R.519-21). The court, however, sustained, the Government's objection to the PSR's

---

[4] A DDoS attack is "when you have multiple computers attempting to communicate with a single computer[] in the hope that the multiple communications would use up all the resources on the victim computer so that it would not be accessible to legitimate users." (R.475).

omission of a leader or organizer enhancement. (R.521-22). The district court stated the record establishes McGraw was the leader of five or more participants, warranting a four-level increase to the offense conduct. (R.522-23). With a criminal history category of I and a total offense level of 28 (after the four-level leader/organizer enhancement), the court noted the applicable Guideline range for McGraw was between 78 and 97 months imprisonment. (R.523).

**The district court imposes a non-Guideline sentence**

The court, looking to the factors set forth in 18 U.S.C. 3553, stated that McGraw's crime "warrants a strong message." (R.530). The district court considered McGraw's attempts to obstruct justice after he was in custody as the reason to send McGraw a message. (R.529-30). Also, the court stated it was going to increase McGraw's offense level because the loss that could have occurred had he carried out his intentions "would have been devastating." (R.530). The court determined McGraw's overall conduct warranted an additional two-level increase to his offense level. (R.530). With a criminal

history category of I and a total offense level of 30 (after the additional two-level adjustment), the court noted the applicable Guideline range for McGraw was between 97 and 121 months imprisonment. (R.530).

The court determined a 110-month term of imprisonment for each count was reasonable to carry out the purposes of the sentencing statutes. (R.530). McGraw's sentences were ordered to run concurrently, to be followed by a three-year term of supervised release. (R.530-31). The court ordered McGraw to pay $31,881.75 in restitution and a mandatory special assessment of $100 on each count. (R.530-31). Following the district court's imposition of McGraw's sentence, the district court, upon the motion of the Government, dismissed the superseding indictment. (R.537). McGraw timely brought this appeal. (R.222).

## SUMMARY OF THE ARGUMENT

The district court committed multiple procedural errors in arriving at McGraw's sentence. It failed to give him credit for acceptance of responsibility and made several other

20

unnecessary upward sentencing adjustments. In addition, the district court's sentence is substantively unreasonable when viewed in context of McGraw's history and personal circumstances. McGraw respectfully requests this Court to vacate his sentence and remand the case to district court for resentencing.

## ARGUMENT

### THE DISTRICT COURT COMMITTED SIGNIFICANT PROCEDURAL ERROR AT SENTENCING AND IMPOSED A SUBSTANTIVELY UNREASONABLE SENTENCE.

#### A. Standard of Review

Whether a sentence is inside or outside of the Guidelines range, this Court reviews the reasonableness of a sentence for an abuse of discretion. *United States v. Brantley*, 537 F.3d 347, 349 (5th Cir. 2008); *United States v. Williams*, 517 F.3d 801, 807-08 (5th Cir. 2008) (citing *Gall v. United States*, 552 U.S. 38 (2007)). First, this Court is to "ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to

21

consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Gall*, 552 U.S. at 51.

If the appellate court finds no such error, it next "consider[s] the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Id.* When reviewing substantive reasonableness, this Court considers "the totality of the circumstances, including the extent of any variance from the Guidelines range." *Id.* at 597. "A discretionary sentence imposed within a properly calculated guidelines range is presumptively reasonable." *United States v. Campos-Maldonado*, 531 F.3d 337, 338 (5th Cir. 2008). Although the Court may apply a presumption of reasonableness to sentences within the Guidelines range, it may not apply a presumption of unreasonableness to sentences outside the Guidelines range. *Gall*, 552 U.S. at 597. "The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is

insufficient to justify reversal of the district court." *Campos-Maldonado*, 531 F.3d at 338.

This Court reviews the district court's interpretation and application of the Sentencing Guidelines *de novo*, but reviews its factual findings for clear error. *United States v. Juarez-Duarte*, 513 F.3d 204, 208 (5th Cir. 2008). "There is no clear error if the district court's finding is plausible in light of the record as a whole." *Id*. This Court gives deference to the credibility determinations of the district court. *United States v. Harms*, 442 F.3d 367, 378 (5th Cir. 2006).

Arguments properly preserved below are reviewed for harmless error. *United States v. Walters*, 418 F.3d 461, 463 (5th Cir. 2005). Under harmless error review, "[a]ny error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." Fed. R. Crim. P. 52(a). An error affects substantial rights if it impacts the outcome of the trial proceedings; conversely, an error is harmless if it does not affect the outcome of the district court proceedings. *United States v. Akpan*, 407 F.3d 360, 377 (5th Cir. 2005). A

sentencing error will be considered harmless if the Government can establish beyond a reasonable doubt that the district court would have imposed the same sentence absent the error. *United States v. Pineiro*, 410 F.3d 282, 286 (5th Cir. 2005).

By contrast, arguments raised for the first time on appeal are subject to the plain error standard. *United States v. Villegas*, 404 F.3d 355, 358 (5th Cir. 2005); *United States v. Medina-Anicacio*, 325 F.3d 638, 643 (5th Cir. 2003). Under plain error review, this Court exercises its discretion to correct a defendant's sentence if there is: (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) that seriously affects the fairness, integrity, or public reputation of the judicial proceedings. *United States v. Lewis*, 412 F.3d 614, 616 (5th Cir. 2005).

## B. The District Court Committed Procedural Error in Calculating Appellant's Sentence

### (1) Appellant is Entitled to a Reduction in His Offense Level for Acceptance of Responsibility

Generally, a defendant can receive a two or three-level reduction in his offense level under the Guidelines for demonstrating acceptance of responsibility for the offense. U.S.S.G. § 3E1.1. This Court "will affirm a sentencing court's decision not to award a reduction under [ ] § 3E1.1 unless it is 'without foundation,' a standard of review more deferential than the clearly erroneous standard." *United States v. Anderson*, 174 F.3d 515, 525 (5th Cir. 1999). Conduct that results in an enhancement for obstruction of justice under § 3C1.1 typically "indicates that the defendant has not accepted responsibility for his criminal conduct." U.S.S.G. § 3E1.1 cmt. n.4. However, there are "extraordinary cases in which adjustments under both §§ 3C1.1 and 3E1.1 may apply." *Id.*

In this case, the district court's denial of credit for acceptance of responsibility is without foundation. The record shows McGraw timely admitted the conduct comprising the

25

offenses of conviction and never falsely denied any additional relevant conduct for which he is accountable. *See id.* § 3E1.1 cmt. n. 3 (affording particular importance to this consideration by deeming it "significant evidence" of acceptance of responsibility when accompanied by a timely guilty plea). McGraw's timely recognition and affirmative acceptance of personal responsibility avoided a long, arduous trial and saved judicial and governmental resources in the process. In addition, McGraw expressed great remorse for his conduct. (R. 443-47) (stating he is "literally broken, ashamed and humiliated . . . by what [he] has done."). Although McGraw may have committed some acts justifying an obstruction of justice enhancement, *see* (R.415) (withdrawing his objections to the obstruction of justice enhancement), such evidence does not outweigh the "significant evidence" of his acceptance of responsibility. This is an extraordinary case, where the court should have granted McGraw credit for his timely acceptance of responsibility. *See generally Juarez-Duarte*, 513 F.3d at 211 (recognizing that even if obstruction of justice enhancement

applies, an adjustment for acceptance of responsibility may still apply in extraordinary instances).

### (2) The Underlying Offenses Did Not Involve the Conscious or Reckless Risk of Serious Bodily Injury

A district court may increase a defendant's offense level if he was conscious or reckless as to the existence of the risk of death or serious bodily injury created by his conduct. Section 2B1.1(b)(13) of the U.S.S.G. provides:

> If the offense involved (A) the conscious or reckless risk of death or serious bodily injury; or (B) possession of a dangerous weapon (including a firearm) in connection with the offense, increase by 2 levels. If the resulting offense level is less than level 14, increase to level 14.

U.S.S.G. § 2B1.1(b)(13). The Sentencing Commission has provided no commentary regarding the application of U.S.S.G. § 2B1.1(b)(13). *See id.*

The Government has failed to establish that McGraw's conduct created a risk of death or serious bodily injury. At sentencing, the prosecution argued an enhancement under § 2B1.1 (B)(13) was warranted because:

27

> the defendant accessed the HVAC computer, which would affect the temperature controls in the building. The temperature controls in the building could adversely affect any of the procedures, any of the equipment, any of the supplies in the hospital and could put at risk a person's safety. And there could a potential risk of death, depending on the length of time and what was actually occurring at the time.

(R.408). The record, however, is devoid of any evidence to

substantiate the prosecutor's remarks that this is a case where

there was a risk of death or serious bodily injury to anyone.

> McGraw's factual resume provides as follows:

> 12.   McGraw was aware that the HVAC computers were used to maintain the environmental controls at the facility. While McGraw claims that [he] did not plan to adversely affect the actual climate in the facility or harm any of the facility's patients or employees, he knew that by modifying the HVAC computer controls he could affect the temperature of the facility. By affecting the environmental controls of the facility, he could have affected the treatment and recovery of the patients who were vulnerable to changes in environment. In addition, he could have affected treatment regimes, including the efficacy of any or all of the temperature sensitive drugs.

(R.74). Nothing in McGraw's factual resume justifies the

prosecutor's conclusion that a risk of death or serious bodily

injury existed. The fact that McGraw's conduct might have

28

affected the treatment or the regimes of patients in some unspecified manner is not enough to support the court's finding absent adequate details about the condition of the patients and how a change in temperature or treatment regime posed a serious risk of bodily injury or harm to these particular patients. Without more information, it is possible that McGraw's conduct might have only subjected the patients at the clinic to varying degrees of discomfort as opposed to life threatening injuries or serious harm. *See* Defendant's Response to the Second Addendum at 2. The district court thus had no assurance that McGraw's conduct posed a risk of death or serious injury to the patients at the clinic. Accordingly, it was unreasonable for the court to enhance McGraw's sentence under § 2B1.1 (B)(13).

The record shows the district court also relied upon a statement McGraw made about the clinic's computers to support the application of § 2B1.1 (B)(13). The district court relied upon the following statement by McGraw  about the HVAC computer: "It's a slow, crappy server computer, but it

29

does have something neat on it, something that could F blank some real S blank up." (R.410). This statement, however, does not shed any light on McGraw's appreciation of a risk of serious injury or death to the individuals at the clinic. Instead, when reviewed in the context of the underlying crimes, McGraw's statement is better understood to be a comment on the abilities of the server in relation to the DDoS attack McGraw was purportedly planning. McGraw's statement thus does not provide any support for the application of the § 2B1.1 (B)(13) enhancement.

### (3)    The Underlying Offenses Did Not Involve Sophisticated Means

The Guidelines warrant a two-level enhancement if the offense involved "sophisticated means." U.S.S.G. § 2B1.1(b)(9)(C). This particular enhancement applies when a defendant employs "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." *Id.* § 2B1.1, cmt. n. 8(B). "The Guidelines do not require every step of the defendant's scheme to be particularly sophisticated; rather, as made clear by the Guidelines'

commentary, the enhancement applies when the execution or concealment of a scheme, viewed as a whole, is especially complex or especially intricate." *United States v. Weiss*, 630 F.3d 1263, 1279 (10th Cir. 2010).

In this case, McGraw was charged with transmission of a malicious code, a type of crime that falls outside the average person's common knowledge. Thus, to warrant application of the "sophisticated means" enhancement to this particular offense, the record must present evidence of the transmission of a malicious code in an "extraordinary" way, *i.e.,* by "sophisticated means." However, the record presents evidence of nothing more than the transmission of a binary code, which does not constitute "sophisticated means" when taken in context with the offense to which the enhancement purportedly applied. *See* Defendant's Response to the Second Addendum at 1. In essence, the record presents nothing showing that McGraw's alleged transmission of the malicious code was by more sophisticated means than that occurring in a "typical" transmission of malicious code prosecution. As

such, application of the sophisticated means enhancement was not warranted.

### (4) Appellant Did Not Lead Five or More Individuals

Section 3B1.1(a) provides a four level increase to a defendant's Guideline offense level "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). The enhancement requires proof that the defendant supervised at least one other culpable participant to be eligible for the enhancement. *United States v. Washington*, 44 F.3d 1271, 1281 (5th Cir. 1995).

In this case, the evidence cited by the Government at sentencing does not lend sufficient support to the district court's decision to apply the § 3B1.1(a) enhancement. (R.521-23). The evidence introduced against McGraw fails to establish that ETA had five or more active members or that McGraw exercised control or authority over at least one of these members. Moreover, the Government's evidence fails to prove any of the ETA members in question had either participated in

the commission of the underlying offenses or committed any acts in preparation for McGraw's Devils Night. The district court's application of the enhancement was improper under the circumstances.

### C. The District Court's Non-Guideline Sentence is Substantively Unreasonable

### (1) Sentencing Variances and Section 3553(a)

This Court recognizes three types of sentences: (1) "a sentence within a properly calculated Guidelines range"; (2) "a sentence that includes an upward or downward departure as allowed by the Guidelines"; and (3) "a non-Guideline sentence" or a "variance" that is outside of the relevant Guidelines range. *United States v. Smith*, 440 F.3d 704, 706–08 (5th Cir. 2006). In reviewing a challenge to the length of a non-Guidelines sentence, this Court may "take the degree of variance into account and consider the extent of a deviation from the Guidelines." *United States v. Herrera-Garduno*, 519 F.3d 526, 530 (5th Cir. 2008). When applying an abuse of discretion review, the Court "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify

the extent of the variance." *Id.* The appropriate 18 U.S.C. §

3553(a) factors are:

> (1)    the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2)    the need for the sentence imposed—
>
>> (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B)    to afford adequate deterrence to criminal conduct;
>>
>> (C)    to protect the public from further crimes of the defendant; and
>>
>> (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3)    the kinds of sentences available;
>
> (4)    the kinds of sentence and the sentencing range established [in the applicable Guidelines] . . .;
>
> (5)    any pertinent policy statement ... [;]
>
> (6)    the need to avoid unwarranted sentence disparities among defendants with similar records who

> have been found guilty of similar
> conduct.
>
> (7)    the need to provide restitution to any
>         victims of the offense.

18 U.S.C. § 3553(a).

## (2)  A Non-Guidelines Sentence was Not Justified Under the Totality of the Circumstances

The district court stated at sentencing that based on the § 3553(a) factors, the sentence it was imposing was outside of the Guidelines range. (R.527-30; Statement of Reasons at 3-4). The district court acted unreasonably in imposing a non-Guidelines sentence in light of the totality of the relevant statutory factors.

As explained above, the district court calculated McGraw's total offense level (including all incremental adjustments) to be 28, which along with a criminal history category of I, resulted in a Guideline range of 78 to 97 months. (R.527). After calculating McGraw's sentencing range, the district court considered the other § 3553(a) factors and noted that it was "adding two levels" to McGraw's offense calculation. (R.527-30). The district court calculated McGraw's total

offense level to be 30 and his resulting sentencing range to be 97 to 121 months. (R.530).

The district court determined that a 110-month sentence on each count was appropriate based on three of the statutory factors: (1) the nature and circumstances of the offenses and McGraw's history; (2) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; and (3) the need for the sentence to provide adequate deterrence. (R.527-30; Statement of Reasons at 3). The court explained:

> Mr. McGraw, you're a young man. And you're a smart young man, smarter than most. I don't know what your IQ is. But I would expect it's impressive, given what you've been able to do musically and otherwise.
>
> As you know, we start off with this guideline level with the points added. I said you were up to 28, with an advisory guideline range of 78 to 97 months.
>
> The thing I have to decide is whether or not I should go above that, below that, or stay within it and where. In deciding that, I have to look at the factors of 18 U.S.C. Section 3553, and they very, very much make a material difference for me in this case.

Without specifically expressly stating each factor, the first two, of course, are the background of the defendant and the nature and circumstances of the crime. We want to make sure the offense promotes just punishment, is a deterrent; promotes again respect for the law and all the other factors.

But what I think causes me to find the most reasonable sentence in this circumstance is a couple of levels up from where it is right now. I have a number of reasons for that.

Mr. McGraw, the nature of the crime here, we have many, many young, brilliant people like yourself out there with, for some reason, a complete lack of responsibility or notion of how their conduct impacts others.

And there is a very important principle at stake here that others like that out there know that this is very serious conduct that you don't get probation for and you don't get a slap on the wrist for, especially when it's consistent, chronic and goes on over a period of time. And I'm talking about just what's in the offense conduct here and just what's in the factual resume.

It was a concerted effort, with nothing that I can see behind it but ill will and an attempt to harm. It wasn't necessarily anything I saw as just fun or gaming. We have had cases like that before, where people used computers to do something called swatting each other; sometimes harmful, sometimes not.

Here I didn't see anything but evil purpose behind what you were doing over the course and period of time that the offense conduct covers in this case.

And although I'm very pleased to see how you've acted today -- I see a different person than I saw that first came in here on numerous occasions who couldn't get along with his counsel and then engaged in conduct that's outside the norm for individuals arrested for this kind of crime, once they've been in jail, and that is this obstruction of justice conduct, which indicates to me that you didn't quite get even close to the impact that you caused with this crime or that you could have caused.

The obstruction of justice, of course, you got credit for that against you. But I'm going to consider the way that obstruction of justice occurred, including after you got in custody, that indicates to me that you and your background, the way you committed this crime and what you did after you got arrested, warrants a strong message.

A reasonable sentence, in my view, that promotes respect for the law and promotes deterrence. Deters others like you from doing the same thing, which if it was carried to its next logical step, which you heard from the nurse, would be devastating.

And certainly I'm not giving you credit for the loss that could have occurred. But I'm going to consider what could have happened if it had been carried out as you planned, which would have been devastating.

(R.527-30).

The district court's determination was unreasonable under the totality of the circumstances. First, the district court

ignored the fact that the circumstances that form the basis of its variance were already taken into consideration when it refused to award McGraw credit for acceptance of responsibility and approved departures for obstruction of justice and risk of serious bodily injury. (PSR 14-15). These sentencing adjustments, or lack thereof, sufficiently account for the district court's concerns about the seriousness of McGraw's conduct.

Second, although the factors considered by the district court in setting McGraw's sentence are all relevant factors, the district court afforded them too much weight in its balancing of the factors. Other factors are present that required significant weight by the district court; factors the court failed to address at sentencing notwithstanding McGraw's motion for a downward sentencing variance. The district court should have given significant weight to the following factors: McGraw was married and supported his family; McGraw was active in his church; he had never been convicted of an offense or felony prior to the instant conviction; his childhood without his

biological parents; and the fact that no one was harmed or injured during the commission of the offenses. (Motion for Sentencing Variance at 1-4). The district court's balancing of the sentencing factors was improper and lead to an unjust punishment, especially given that the present circumstances are not so extraordinarily different from the circumstances that would typically appear in other malicious codes cases.

Even if this Court concludes the facts of this case warrant an upward variance from the advisory Guideline range, the facts of this case are not so compelling as to justify the sentence imposed. Considering McGraw is a first-time offender and the PSR determined the applicable Guideline range for him was only 51 to 63 months imprisonment, a 110-month sentence is simply not just.

### D. Appellant is Entitled to a Remand for Resentencing

McGraw's base offense level began as a mere 6 in this case. After multiple departures and the additional two-level upward variance by the court, McGraw's final offense level became a 30. Had the district court granted McGraw credit for

acceptance of responsibility, not applied any of upward sentencing adjustments, or not applied an additional two-level sentencing variance, McGraw's sentence would have been much less than 110 months. The district court's sentencing errors are therefore not harmless. Accordingly, this court should vacate McGraw's sentence and remand the cause to the district court for resentencing.

## **<u>CONCLUSION</u>**

The district court committed multiple harmful errors in the course of sentencing McGraw, each of which unnecessarily increased the length of his sentence. For the reasons expressed above, this Court should vacate McGraw's sentence and remand the cause to the district court for resentencing.

Respectfully submitted,

Kimberly S. Keller

KELLER STOLARCZYK, PLLC
234 W. Bandera Rd., No. 120
Boerne, Texas 78006
Tele: 830.981.5000
Facs: 888.293.8580

41

## CERTIFICATE OF SERVICE

I, Kimberly S. Keller, certify that today, October 14, 2011, a copy of Appellant's Brief and Record Excerpts were served, via this Court's e-filing system, on opposing counsel, Assistant U.S. Attorney Nancy Larson. I also certify that a hard copy of Appellant's Brief and Record Excerpts have been served on the defendant-appellant Jesse William McGraw at the following address: Jesse William McGraw, No. 38690-177, FCI Seagoville, P.O. Box 9000, Seagoville, TX  75159.

Kimberly S. Keller

## CERTIFICATE OF COMPLIANCE

The undersigned counsel hereby certifies as follows:

1. This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 8,501 words printed in a proportionally spaced typeface.

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5)(A) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it is printed in a proportionally spaced, serif typeface using Bookman Old Style 14 point font in text and Bookman Old Style 12 point font in footnotes.

3. This brief complies with the privacy redaction requirements of 5th Circuit Rule 25.2.13.

4. This brief complies with 5th Circuit Rule 25.2.1 because it is an exact copy of the electronic submission.

5. This brief is free of viruses because it has been scanned for viruses with the most recent version of a commercial virus scanning program produced by Avast.

Kimberly S. Keller